UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:14-CR-00203-05** |
| **VERSUS** | **JUDGE DRELL** |
| **JENEE LYNN HARGRAVE (05)** | **MAGISTRATE JUDGE HANNA** |

### REPORT AND RECOMMENDATION

Before the Court is Jenee Lynn Hargrave's *pro se* Motion for Relief from Judgment Pursuant to Rule 60 of the Federal Rules of Criminal Procedure (Rec. Doc. 536), subsequently re-styled, through appointed counsel, as Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C. §2255 (Rec. Doc. 567). The Government filed a Response. (Rec. Doc. 583). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. For the reasons stated below, the motion is **DENIED**.

### BACKGROUND

On November 12, 2014, Hargrave was indicted with fourteen other defendants on several counts arising out of a conspiracy to distribute methamphetamine. (Rec. Doc. 1). She retained Roy Richard to represent her in the proceedings.

On September 15, 2015, Hargrave pled guilty to Count 1 – Conspiracy to Distribute, and Possess with Intent to Distribute Methamphetamine, in violation of

21 U.S.C. §846. (Rec. Doc. 582). On September 14, 2015, the day prior to the change of plea hearing, the Court conducted a Garcia hearing. At the hearing, Hargrave expressed concern that she had not spoken to Mr. Richard in quite a few months, but by that time, she had spoken with him and was satisfied. (Rec. Doc. 586, p. 3). She confirmed that she did not have any issues at that time and that she was "doubly sure" that she was satisfied with Mr. Richard's representation. *Id.* p. 3 and 5.

On January 15, 2016, she was sentenced to serve 120 months, followed by five years of supervised probation and a special assessment. (Rec. Doc. 448). During her pre-trial detention, she was incarcerated at the Iberia Parish jail. She was later transferred to a Florida facility to serve her sentence. (Rec. Doc. 567-1, ¶3; 11). Hargrave now contends she had minimal communication with Mr. Richard during the pre-trial process and no communication with him after she was sentenced. (Rec. Doc. 567-1, ¶7-13; 21).

On August 17, 2018, Hargrave filed a Motion to Compel Mr. Richard to turn over her file. (Rec. Doc. 529). The Court granted the Motion and ordered Mr. Richard to turn over the file to counsel appointed to receive same, Mr. Cliff LaCour. (Rec. Doc. 532). When Mr. Richard failed to deliver the file as ordered, the Court ordered him to appear and show cause. (Rec. Doc. 540). At the show cause hearing, Mr. Richard advised the Court that he had lost the file. Accordingly, the Court ordered the Government to work with Mr. Richard to recreate Hargrave's lost file

and to deliver the recreated file to Mr. Lacour. (Rec. Doc. 545). Among the items in the recreated file was a March 6, 2015 letter from the Assistant US Attorney, Myers Namie, to Mr. Richard advising that Jason Comeaux, the former Iberia Parish Sheriff's Deputy who had investigated her case, was under investigation by the U.S. Department of Justice Civil Rights Division. The letter also provided the related civil suit information. (Rec. Doc. 567-4). Mr. Richard did not provide a copy of the letter to Hargrave or discuss its contents with her. (Rec. Doc. 567-1, ¶17).

According to Hargrave, she learned on August 20, 2018 that Comeaux had been convicted of civil rights violations arising out of his participation in the severe beating of an inmate at the Iberia Parish Jail. (Rec. Doc. 567-1, ¶20; Rec. Doc. 567, p.7, referencing Rec. Doc. 530). She immediately filed her Rule 60 Motion. (Rec. Doc. 536). The Court ordered the Government to file a response and appointed Mr. Stephen Shapiro to represent her. Following the file fiasco, Mr. Shapiro filed the "Supplemental and Amended Memorandum in Support of Motion for Relief from Judgment or Order Pursuant to Rule 60 of the Federal Rules of Civil Procedure and Vacate Conviction and Sentence Pursuant to 28 U.S.C. §2255." (Rec. Doc. 567). The Government filed its Response on September 23, 2019. (Rec. Doc. 583).

## LAW AND ANALYSIS

### I.  Nature of Relief Sought

Hargrave initially filed a Motion for Relief pursuant to Federal Rule of Criminal Procedure Rule 60. Although the *pro se* Motion was styled as a Motion under Criminal Rule 60, Hargrave actually sought relief under Federal Rules of Civil Procedure, Rule 60, which authorizes relief from civil judgment on certain enumerated grounds. (Rec. Doc. 536, p. 2-3). Criminal Rule 60 pertains to victims' rights and is inapplicable to this case. Likewise, Civil Rule 60 is inapplicable in this criminal context. Rather, Hargrave seeks to have her conviction and sentence vacated, as clarified in her counsel's subsequent filing. (Rec. Doc. 567).

> [A] court will sometimes recharacterize a motion filed by a *pro se* prisoner as a request for habeas relief under § 2255 even though the motion is labeled differently.
>
> "*[P]ro se* habeas petitions are not held to the same stringent and rigorous standards as are pleadings filed by lawyers." Ultimately, "[i]t is the substance of the relief sought by a *pro se* pleading, not the label that the petitioner has attached to it, that determines the true nature and operative effect of a habeas filing."
>
> *United States v. Elam*, 930 F.3d 406, 409 (5th Cir. 2019), citing *Castro v. United States*, 540 U.S. 375, 377 (2003), and *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (per curiam).

The court may recharacterize a *pro se* litigant's pleading as his first §2255 after informing the litigant of its intent to recharacterize, warning the litigant that the recharacterization will subject subsequent §2255 motions to the law's "second or

successive" restrictions, and providing the litigant with an opportunity to withdraw, or to amend, the filing. *Id.*, citing *Castro*, 540 U.S. at 377. Here, however, Hargrave is no longer proceeding *pro se*. In fact, her appointed counsel, Mr. Shapiro, has re-characterized the relief sought as that covered by §2255. Hence, the Court will construe Hargrave's motion as a motion for relief under §2255.

## II.    Timeliness of §2255 Motion.

A federal inmate has one year to file a motion for relief under §2255. 28 U.S.C. §2255(f). The one-year period commences with the latest of the following:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Hargrave acknowledged that she did not file her Motion until October 1, 2018, well beyond the one-year period after her conviction became final. (Rec. Doc. 567, p. 7). She instead relies on §2255(f)(4), arguing that she did not discover the facts supporting her claim (that Comeaux was convicted of civil rights violations) until August 24, 2018, nearly three years after her conviction, when she received a copy

of this Court's Report and Recommendation denying her co-defendant's §2255 motion.[1] Under §2255(f)(4),

> "a petitioner's diligence must merely be 'due' or 'reasonable' under the circumstances." As the Supreme Court has explained, "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that he should act. In applying § 2255(f)(4), "[t]he important thing is to identify a particular time when ... diligence is in order."
>
> *United States v. Rodriguez*, 858 F.3d 960, 962 (5th Cir. 2017), *as revised* (June 14, 2017) (citations and footnote omitted).

Hargrave contends that she could not have discovered that Comeaux had been investigated or convicted of civil rights violations sooner, because Mr. Richard never informed her of any such issues (despite the Government having advised him of Comeaux's pending civil rights charges), and because she is incarcerated in Florida, without access to internet or Lafayette media. (Rec. Doc. 567-1, ¶20-23). Insofar as her claim is based on Mr. Richard's ineffective assistance of counsel, the Government argues that the conduct about which Hargrave complains (including his failure to communicate with her or her family during the proceedings and his failure to file a Notice of Appeal, despite instruction to do so) occurred during the representation and shortly after she was sentenced. The Court agrees that Hargrave was on notice of Mr. Richard's conduct supporting her ineffective assistance of

---

[1] In the Court's Report and Recommendation regarding Ko Changkongshinh, this Court addressed Changkongshinh's challenge based on Comeaux's conviction. (Rec. Doc. 530).

counsel claim during the time of the representation and at the latest when Mr. Richard failed to appeal, shortly after her conviction in September 2015. Thus, her §2255 motion based on ineffective assistance of counsel is time-barred by §2255(f)(4).

Insofar as Hargrave's Motion is premised upon Comeaux's civil rights conviction and her delayed knowledge of same, the Government represents that Hargrave was housed at the Iberia Parish prison during her pre-trial detention from November 24, 2014 through January 29, 2016, during which time discussions regarding the inmate beating incident would have been rampant.[2] The Government further argues that Hargrave could have easily learned more about the status of Comeaux's investigation and ultimate conviction through her telephone and email communications with family and friends back in Louisiana. The Court agrees. Even minimal diligence during the time frame of her incarceration at the Iberia Parish prison would have prompted further investigation, which would have revealed Comeaux's involvement in the inmate incident and resulting investigation and criminal charges. Therefore, the Court finds that Hargrave's Motion insofar as it relates to Comeaux is untimely under §2255(f)(4). Nonetheless, the Court has further

---

[2] Comeaux pled guilty to Civil Rights Conspiracy, Deprivation of Rights Under Color of Law, and Conspiracy to Obstruct on March 7, 2016. See 16-CR-0045, Rec. Doc. 3.

considered the merits of Hargrave's Motion and finds that, even if the Motion had been timely, the Motion lacks merit.

### III. Whether §2255 relief is warranted.

A federal prisoner may collaterally attack his conviction or sentence under 28 U.S.C. §2255 on one or more of the following grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose the sentence;" (3) "the sentence was in excess of the maximum authorized by law;" and (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).

Following conviction and exhaustion or waiver of the right to appeal, the court presumes that a defendant "stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)). Relief under §2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). The collateral challenge process of §2255 is no substitute for appeal. A defendant may not raise a constitutional issue for the first time on collateral review without showing cause and

prejudice for the procedural bar, or actual innocence. *United States v. Mimms*, 43 F.3d 217, 219 (5th Cir. 1995). However, this bar does not apply to ineffective assistance of counsel claims, which may be raised for the first time in a collateral proceeding under §2255 regardless of whether the defendant raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 505–09 (2003).

### A. **Ineffective Assistance**

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. 466 U.S. at 687. A defendant must satisfy both prongs of the *Strickland* test in order to prevail, and the court need not approach the inquiry in the same order or address both components should the defendant fail to satisfy one. *Id.* at 697.

The first prong does not require perfect assistance by counsel; rather, defendant must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 687–88. In this review courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second prong, the court looks to any prejudice suffered as a result of counsel's deficient performance. This prong is satisfied if the defendant can show "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt" and that the errors were sufficiently serious to deprive the defendant of a fair trial with a reliable verdict. *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95). In the context of a guilty plea, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Allen*, 250 Fed. Appx. 9, 12 (5th Cir. 2007) (unpublished) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Hargrave attested that Mr. Richard failed to adequately communicate with her and her family, that he did not speak on the phone with them, did not send any documents to her, only minimally texted her family, visited her at the Iberia Parish Jail 3 times during the representation, and failed to send her discovery materials or go over discovery with her, despite repeated requests. (Rec. Doc. 567-1, ¶7-13). She

further attested that after she was sentenced, she had no further communication with Mr. Richard, and that he did not file a Notice of Appeal on her behalf, despite the texted request *of her family*, there is no attestation that Hargrave timely requested an appeal. (Rec. Doc. 567-1, ¶21). The Court acknowledges that counsel's alleged failure to file an appeal despite written request constitutes *per se* ineffective assistance of counsel;[3] however, as set forth above, Hargrave was aware of Mr. Richard's failures during the representation and shortly after her sentencing, rendering the attack now untimely. Further, Hargrave testified under oath at a *Garcia* hearing on September 14, 2015:

> THE DEFENDANT: Um, I had -- I was concerned because I hadn't spoken to my lawyer in quite a few months, but I have spoke with him now and I'm satisfied now.
>
> THE COURT: Okay. You don't have any issues?
>
> THE DEFENDANT: No, sir.
>
>    ***
>
> THE COURT: …All right. So, Ms. Hargrave, I just want to make doubly sure, you are satisfied with the representation by your counsel?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Because in the event you do change your plea from not guilty to guilty, you will be asked that question again. And I don't want you to think we're picking on you. We just want to make

---

[3]  *United States v. Tapp*, 491 F.3d 263 (5th Cir. 2007).

sure, given the information that was communicated to our office. Do you wish to speak at all with Mr. LaCour?

THE DEFENDANT: No.

(Rec. Doc. 586, p. 3; 5).

Similarly, she confirmed her satisfaction with Mr. Richard's representation at her change of plea hearing the following day:

THE COURT: All right. Have you had ample opportunity to discuss your case with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And are you satisfied with his representation of you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel that he knows and understands the facts and circumstances surrounding the case that the government has against you?

THE DEFENDANT: Yes, sir.

(Rec. Doc. 582, p.5, line 13-22).

Thus Hargrave's testimony belies many of her present assertions, Regardless, Hargrave has not shown the requisite prejudice for an ineffective assistance claim.

Hargrave was charged in Counts 1, 7, and 11 of the indictment. (Rec. Doc. 1). Count 1 is the conspiracy count to which she pled guilty. Count 7 alleges possession with intent to distribute methamphetamine of more than 50 grams. (Id.) Given her prior criminal history of at least one prior felony drug conviction, Hargrave was at

risk to serve a mandatory minimum of twenty years, or even potentially a life sentence. With a criminal history category of IV and a total offense level of 31, her guideline range was 151-188 months. Nonetheless, Mr. Richard negotiated a plea agreement on Hargrave's behalf which included a recommended departure from the guideline range and prohibited the United States from filing enhancements for Hargrave's prior convictions under 21 U.S.C. 851. (Rec. Doc. 327). Ultimately, she was sentenced to the minimum mandatory sentence of ten years based solely on the one conviction for the crime to which she pled guilty, i.e. below the guideline range, despite the fact that she admitted to accepting responsibility for the distribution of "ice" in excess of 500 grams, but no more than 1500 grams, with a purity level of 80-90%. (Rec. Doc. 327-2).

The Court finds that even if Mr. Richard had engaged in more meaningful communication with Hargrave and advised her of the potential to impeach Comeaux with the civil rights evidence, Hargrave more probably than not still would have pled guilty in lieu of going to trial. Not only did she enter into a plea agreement resulting in the minimum mandatory sentence, but none of the other defendants who were also investigated by the same team involving Comeaux elected to proceed to trial. Further, Hargrave admitted to facts under oath which the Government could likely have presented at trial even without Comeaux's testimony. As such, Hargrave has

not shown that she was sufficiently prejudiced by Mr. Richard's purportedly sub-standard representation to prevail on her ineffective assistance of counsel claim.

### B. *Brady* Claims

Hargrave next contends that her guilty plea was not knowing and voluntary because it was made without the knowledge of Comeaux's civil rights violations. She argues that the Government failed to comply with its *Brady* obligations to disclose evidence material to guilt or punishment, because it did not provide any documents or facts regarding Comeaux's charges other than the single March 6, 2015 letter. (Rec. Doc. 267-4). The Court re-notes here that a defendant may not raise a constitutional issue for the first time on collateral review without showing cause and prejudice for the procedural bar, or actual innocence. *Mimms*, 43 F.3d at 219. Hargrave does not claim that she was actually innocent. Assuming, without deciding, that she was otherwise procedurally barred from directly appealing the *Brady* issue due to her attorney's alleged shortcomings (including Mr. Richard's alleged failure to file a Notice of Appeal and/or the loss of her file containing the AUSA's letter), the Court finds that her claims nevertheless fail on the merits.

To establish a *Brady* violation the defendant must prove that (1) the prosecution actually suppressed the evidence, (2) the evidence was favorable to him, and (3) the evidence was material. *Reed v. Stephens*, 739 F.3d 753, 781 (5th Cir. 2014). "A petitioner's *Brady* claim fails if the suppressed evidence was discoverable

through reasonable due diligence." *Id*. citing *United States v. Brown,* 650 F.3d 581, 588 (5th Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1969, (2012). "Suppressed evidence is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *Id*., citing *United States v. Bagley,* 473 U.S. 667, 682 (1985).

> The Government is not required…to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own." … "[W]hen information is fully available to a defendant at the time of his trial and his only reason for not obtaining and presenting the evidence to the court is his lack of reasonable diligence, the defendant has no *Brady* claim."
>
> *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002) (citations omitted).

The Government argues that it did not suppress any evidence. The Government, through Assistant US Attorney, Mr. Namie, sent a letter to Mr. Richard advising of the civil rights investigation and the pending civil suit against Comeaux, providing the docket number. The Government was under no further obligation to provide Hargrave, through her counsel or otherwise, of updates in the case(s) against Comeaux, particularly where the circumstances were well-publicized.

Further, although the evidence of Comeaux's civil rights violations might have been favorable to Hargrave as impeachment evidence, the Court is not convinced that the evidence was material. Hargrave knowingly admitted to each of

the underlying facts supporting her conviction at the guilty plea hearing. (Rec. Doc. 582, p. 16-22). She admitted that she conspired with co-defendants to acquire and re-sell crystal methamphetamine. She admitted that she pooled money with others to purchase one kilogram of crystal methamphetamine to transfer it from Texas to Louisiana, as revealed by recorded calls and text messages from authorized wiretaps of their cell phones. (Rec. Doc. 18-19). She admitted responsibility for distribution of 500 to 1,500 grams of actual methamphetamine. (Rec. Doc. 327-2). These factual stipulations alone, which Hargrave admitted were knowing and voluntarily given, were sufficient to support her conviction for violation of 21 U.S.C. 846. The unrelated civil rights transgressions of one of the investigating narcotics officers would not have made these admitted facts less true. Hence, the Court finds the Government did not commit a *Brady* violation, such that Hargrave's motion on these grounds should be denied.

No other grounds support that Hargrave's guilty plea was not knowing and voluntary. At the change of plea hearing, she testified that she "had ample opportunity to discuss [her] case with [her] attorney," that she was satisfied with his representation, and that she felt that Mr. Richard knew and understood the facts and circumstances of the case. (Rec. Doc. 582, p. 5). She further testified that she felt it was in her best interest to plead guilty at that time. *Id*. She acknowledged that she understood the contents of the plea agreement, including the elements of Count 1

(Rec. Doc. 582, p. 8-9). She assured the Court that she understood her rights and that she had read with her attorney "every word, line, sentence, and paragraph," of the documents. (Rec. Doc. 582, p. 8-15; 22, 23). The Court finds that her plea was knowing and voluntary.

## IV. <u>Evidentiary Hearing</u>

The court must grant an evidentiary hearing on a §2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *e.g.*, *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). No evidentiary hearing is required where the defendant's claims are "either contrary to law or plainly refuted by the record." *United States v. Green*, 882 F.2d 999, 1008 (5th Cir. 1989). Hargrave has pointed to no contested factual issue material to her claims. As set forth above, the filings and record conclusively demonstrate that she is not entitled to relief. Therefore, no hearing is required.

## CONCLUSION

For these reasons, the Court recommends that Hargrave's Motion for Relief from Judgment Pursuant to Rule 60 of the Federal Rules of Criminal Procedure (Rec. Doc. 536), subsequently re-styled as Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C. §2255 (Rec. Doc. 567) be DENIED.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Lafayette, Louisiana on this 30th day of September, 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE